**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD G. WADE, JR., *et al.*, | ) | |
| | ) | |
| Appellants, | ) | Case No. 18-cv-4065 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| KREISLER LAW P.C., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

The Bankruptcy Code isn't known for beautiful prose. Far from it. The text sometimes leaves a little something to be desired. And sometimes the text leaves *a lot* to be desired. This appeal proves the point.

As soon as debtors file for bankruptcy, they receive protection from their creditors through an automatic stay. All collection efforts must come to a screeching halt. But for certain debtors, the stay doesn't stay in place forever. Sometimes debtors file for bankruptcy more than once within a year. The Bankruptcy Code gives those debtors less protection the second time around.

Section 362(c)(3)(A) of the Bankruptcy Code lifts the automatic stay after 30 days for debtors who file for bankruptcy twice within one year. That provision helps to prevent debtors from filing and refiling bankruptcy petitions in bad faith, simply to disrupt the ability of creditors to collect what's owed.

Harold and Lorraine Wade filed for bankruptcy twice in one year. After the 30 days, Kreisler Law P.C. (a law firm) took action to enforce a debt against the Wades. It obtained a lien against the Wades' real property.

That action sparked a motion for sanctions and ignited a debate about whether the automatic stay remained partially in place. Kreisler argued that section 362(c)(3)(A) lifted the automatic stay in its entirety. But the Wades believed that the stay remained in place for the property of the estate.

The provision says that the automatic stay terminates "with respect to the debtor" after 30 days. Those five words, buried deep in the bowels of the Bankruptcy Code, have wreaked a lot of havoc in the case law. The text has bedeviled the bench and the bar ever since it hit the books. Bankruptcy courts have puzzled over its meaning and debated its reach for more than two decades, and counting.

Some courts hold that section 362(c)(3)(A) lifts the stay in part, and allows creditors to take action against the debtor and the debtor's property, but not the property of the estate. That's the majority view. Other courts adopt the minority view and hold that section 362(c)(3)(A) lifts the automatic stay in its entirety, including the property of the estate.

In the case at hand, the bankruptcy court adopted the minority view. The bankruptcy court held that the automatic stay was no longer in effect, and did not prevent Kreisler from taking action against the property of the estate.

This Court sees things differently and adopts the majority view. The text is flawed, but the least-bad-if-not-best reading is that the automatic stay remains partially in place for second-time filers. So, here, the automatic stay continued for the property of the estate.

For the following reasons, the order of the bankruptcy court is reversed.

**Background**

The facts are undisputed. Over a decade ago, Harold and Lorraine Wade jointly filed for bankruptcy. *See In re Wade*, 592 B.R. 672, 674 (Bankr. N.D. Ill. 2018). They voluntarily dismissed the petition in November 2014. *Id.*

The Wades didn't stay out of bankruptcy court for long. They filed for bankruptcy again two months later, in January 2015. *Id.*

Under section 362(a) of the Bankruptcy Code, the Wades' second petition triggered an automatic stay. The stay covered the Wades, their property, and the property of the bankruptcy estate. *See* 11 U.S.C. § 362(a).

But not for long. The Wades were second-time filers. And they filed for bankruptcy twice in less than one year.

The Bankruptcy Code gives less protection to debtors who file for bankruptcy twice in a year. Specifically, section 362(c)(3)(A) cuts short the stay for second-time filers. *See* 11 U.S.C. § 362(c)(3)(A); *see In re Wade*, 592 B.R. at 674. The automatic stay ends after 30 days "with respect to the debtor."

The Wades moved to extend the stay. *See In re Wade*, 592 B.R. at 674; 11 U.S.C. § 362(c)(3)(B). But some scheduling issues prevented the bankruptcy court from hearing the motion. *See In re Wade*, 592 B.R. at 674. So, on February 14, 2015, the automatic stay expired "with respect to the debtor" under section 362(c)(3)(A). *Id.*

The Wades' bankruptcy petition listed Kreisler Law P.C. as a creditor. *Id.* Kreisler had sued the Wades to collect on a debt. Once the stay expired, Kreisler took action to obtain and enforce a judgment. *See* Appellee's Brief, at 2 (Dckt. No. 36).

Kreisler obtained a state-court default judgment against Lorraine Wade. *See In re Wade*, 592 B.R. at 674. Kreisler recorded the judgment and converted it into a lien against the Wades' real property. *See* Appellee's Brief, at 4 (Dckt. No. 36). The lien attached to the Wades' residence and other real estate. *Id.* That property belonged to the estate.

That action sparked a debate about whether the automatic stay remained in place. *See In re Wade*, 592 B.R. at 675. Everyone agreed that section 362(c)(3)(A) lifted the automatic stay, at least in part. But the parties disagreed about whether the statute lifted the stay in part, or in its entirety.

The verbose text of section 362(c)(3)(A) provided a fertile breeding ground for the disagreement. It reads: "[T]he stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case[.]" *See* 11 U.S.C. § 362(c)(3)(A).

The Wades argued that the phrase "with respect to the debtor" means that the stay terminated only for actions against the debtor or the debtor's property, but not the property of the estate. *See In re Wade*, 592 B.R. at 675. In their view, Kreisler violated the automatic stay by attaching a lien to the real property because that property was in the estate. *Id.* The Wades requested sanctions from the bankruptcy court. *Id.*

Kreisler, for its part, interpreted section 362(c)(3)(A) as terminating the stay in full. It asked the bankruptcy court to confirm that the automatic stay had, in fact, fully expired. *Id.*

The bankruptcy court capably analyzed the splintered case law about the meaning of section 362(c)(3)(A). *Id.* at 675–78. The "majority view" interprets the phrase "with respect to the debtor" to mean that the automatic stay comes to an end for actions against the debtor and the debtor's property, but not the property of the estate. *Id.* at 675. In other words, the property of the estate continues to receive protection from creditors under the automatic stay.

Other courts see things differently. Under the "minority view," the automatic stay "terminates as to *all* of the debtor's property, whether or not it is part of the bankruptcy estate." *Id.* (emphasis added).

The bankruptcy court carefully analyzed the issue and adopted the minority view. *Id.* at 676. In particular, the court adopted the so-called "spousal-exclusion" interpretation of the phrase "with respect to the debtor." *Id.* at 676–78. The idea is that the phrase "with respect to

the debtor" covers situations where two spouses file a joint petition for bankruptcy, and only one of the spouses had applied for bankruptcy within a year.

In doing so, the bankruptcy court reached the same conclusion as a few other bankruptcy courts in this district. *See In re Daniel*, 404 B.R. 318 (Bankr. N.D. Ill. 2009); *In re Curry*, 362 B.R. 394 (Bankr. N.D. Ill. 2007).

So, the bankruptcy court concluded that the automatic stay terminated in its entirety in February 2015. *See In re Wade*, 592 B.R. at 675–76. Under that reading, Kreisler did not violate the stay when it attached a lien to the Wades' real estate. *Id.* at 678.

The bankruptcy court issued an order confirming the termination or absence of the automatic stay. The bankruptcy court also denied the Wades' motion for sanctions. *Id.*

The bankruptcy court then certified the case for direct appeal to the Seventh Circuit. *See* Certification for Direct Appeal (Dckt. No. 7-2). The bankruptcy court noted that the Supreme Court and the Seventh Circuit have not reached the issue.

A circuit split exists about the meaning and the reach of section 362(c)(3)(A). At this point, the circuit split has only one Court of Appeals on each side.

The First Circuit adopted the minority view and held that the automatic stay expires altogether. *See In re Smith*, 910 F.3d 576, 591 (1st Cir. 2018). But the Fifth Circuit came out the other way, holding that the automatic stay remains in place for the property of the estate. *See Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 230 (5th Cir. 2019) (per curiam).

The relatively sparse appellate case law doesn't do justice to the volume of case law on this topic by bankruptcy courts across the country. Bankruptcy courts have gone round and round about this issue for two decades. A comprehensive string cite on this topic would take too long to type, and would achieve little except bludgeoning the reader into submission. Suffice it to say that many dozens of cases discuss this issue.

The Seventh Circuit provisionally accepted the Wades' appeal. *See In re Wade*, 926 F.3d 447, 448 (7th Cir. 2019). But in the end, it never reached the merits. *Id.*

The Seventh Circuit dismissed the appeal because the Wades did not ask for permission to appeal under Rule 8006(g) of the Federal Rules of Bankruptcy Procedure. *Id.* As a result, the Seventh Circuit explained that the Wades had to pursue the appeal through the ordinary process – which starts in district court. *Id.* at 451.

At that point, the case came to this Court.

## Legal Standard

District courts have jurisdiction to hear bankruptcy appeals under 28 U.S.C. § 158. "The district court functions as an appellate court when reviewing bankruptcy court decisions." *In re Pre-Press Graphics Co., Inc.*, 307 B.R. 65, 70 (N.D. Ill. 2004) (citing *Bielecki v. Nettleton*, 183 B.R. 143, 145 (N.D. Ill. 1995)); *see also* Fed. R. Bankr. P. 8013.

"A federal district court reviews a bankruptcy court's factual findings for clear error, and reviews the bankruptcy court's legal conclusions de novo." *In re Marsh*, 929 F. Supp. 2d 852, 854 (N.D. Ill. 2013) (citing *Bielecki*, 183 B.R. at 145); *see also In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014) ("Like the district court, we review a bankruptcy court's factual findings for clear error and its legal conclusions *de novo.*"); *Petr Tr. for BWGS, LLC v. BMO Harris Bank N.A.*, 95 F.4th 1090, 1097 (7th Cir. 2024) ("We review the judgment of the district court using the same standard of review with which the district court reviewed the bankruptcy court's ruling. Like the district court, we review a bankruptcy court's factual findings for clear error and its legal conclusions de novo.") (internal quotation marks omitted).

## Analysis

This case rests on two central pillars of bankruptcy law: the creation of the bankruptcy estate, and the imposition of the automatic stay.

Important things happen as soon as a bankruptcy petition hits the docket. For starters, the filing of a petition immediately "creates an estate" that includes, with some narrow exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1).

"[W]ith a few enumerated exceptions, the bankruptcy estate consists of all of the *debtor's* legal and equitable property interests that existed *as of the commencement of the case*, that is, as of the time that the bankruptcy petition, voluntary or involuntary, is filed." *See* 5 Collier on Bankruptcy ¶ 541.02 (16th ed. 2026) (emphasis in original).

The scope of section 541(a)(1) is "broad and all encompassing." *See* 5 Collier on Bankruptcy ¶ 541.03 (16th ed. 2026) (emphasis in original). "Congress's intent to define property of the estate in the broadest possible sense is evident from the language of the statute . . . . It would be hard to imagine language that would be more encompassing." *See* 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2026) (emphasis in original).

The "underlying theory of section 541(a)(1) is to bring into the estate *all* interests of the debtor in property as of the date the case is commenced." *See* 5 Collier on Bankruptcy ¶ 541.03 (16th ed. 2026) (emphasis in original). "Under section 541, once the estate is created, no interests in property of the estate remain in the debtor." *Id.*

Filing a bankruptcy petition also triggers an automatic stay. *See* 11 U.S.C. § 362(a). The automatic stay forces all collection efforts by creditors to grind to a halt. It gives the debtor some breathing room for a fresh start, and it prevents a mad scramble and a feeding frenzy by creditors.

"Property belonging to the estate is protected from piecemeal dismantling by creditors by the automatic stay of section 362. It is this central aggregation and protection of property that promote the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors according to the priorities set forth within the Code." *See* 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2026).

An automatic stay ensures equal treatment between creditors. Without it, creditors would have an incentive to collect as much as they can, as soon as they can. It would create a horse race between creditors, where everyone is jockeying for position to outdo everyone else. *See City of Chicago v. Fulton*, 592 U.S. 154, 157 (2021) ("The automatic stay serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others.").

Section 362 of the Bankruptcy Code governs automatic stays. The statute provides that the filing of a bankruptcy petition "operates as a stay" in eight areas. *See* 11 U.S.C. § 362(a). Some of the provisions cover "the debtor." Others cover the property of the debtor, or the property of the estate.

For example, the stay applies to the "commencement or continuation" of "judicial, administrative, or other action or proceeding against the debtor." *See* 11 U.S.C. § 362(a)(1). The stay also covers "the enforcement, against the debtor or against property of the estate, of a judgment obtained before" the filing of the bankruptcy petition. *See* 11 U.S.C. § 362(a)(2). And the stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *See* 11 U.S.C. § 362(a)(3). It applies in other areas, too.

The next subsection offers a long list of exceptions. The automatic stay does not apply in more than two dozen situations, including cases about paternity, child support, divorce, domestic violence, and so on. *See* 11 U.S.C. § 362(b).

In general, the stay of any action against the property of the estate continues until the property is no longer property of the estate. *See* 11 U.S.C. § 362(c)(1). The stay of any other action remains in place until the case is closed or dismissed, or until a discharge is granted (in a chapter 7 case), whichever is earlier. *See* 11 U.S.C. § 362(c)(2).

In 2005, Congress amended the statute as part of the Bankruptcy Abuse Prevention and Consumer Protection Act. Congress added section 362(c)(3) and gave less protection to debtors who file for bankruptcy twice in one year. For those debtors, the automatic stay "with respect to the debtor" ends after 30 days. *See* 11 U.S.C. § 362(c)(3)(A).

The statutory provision is a bit of a mouthful, and after chewing it over, it's hard to choke it down, let alone digest it. It reads:

> (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b) –
>
> > (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case[.]

*See* 11 U.S.C. § 362(c)(3)(A).

The first paragraphs is clunky, but after a few reads, it isn't hard to figure out what it means. The provision is about a debtor "who is an individual." *Id.* "The term 'debtor' means [the] person . . . concerning which a case under this title has been commenced." *See* 11 U.S.C. § 101(13); *see also id.* at § 101(41) ("The term 'person' includes individual[.]"). The provision applies to a person who files for bankruptcy twice within one year.

But the subsection that follows has confounded courts for years. It's a statutory clunker, with awkward phraseology. The phrase "with respect to" appears four times, which doesn't help readability.

The provision reads as follows: "[T]he stay under subsection (a) *with respect to* any action taken *with respect to* a debt or property securing such debt or *with respect to* any lease shall terminate *with respect to* the debtor on the 30th day after the filing of the later case[.]" *See* 11 U.S.C. § 362(c)(3)(A) (emphasis added).

As a starting point, it's helpful to read the provision without any of the "with respect to" phrases, just to get the main idea. Reading the provision without the interior clutter helps to get your head around the overall point.

The gist is that the automatic stay ends after 30 days: "[T]he stay under subsection (a) . . . shall terminate . . . on the 30th day after the filing of the later case[.] *See* 11 U.S.C. § 362(c)(3)(A) (emphasis added).

But the devil is in the details. All of the action is hiding behind those two ellipses. The phrase "with respect to" appears four times, and that text does the heavy lifting. It defines where the automatic stay remains in place, and where it ends. Figuring out what the phraseology means takes some doing.

The phrase "with respect to" is wordy, which gums up the works. It usually means "regarding," "concerning," or "about." Or maybe "as to" or "for."

Swapping out those words might improve readability. After replacing "with respect to" with "regarding," the statute would read: "[T]he stay under subsection (a) [regarding] any action taken [regarding] a debt or property securing such debt or [regarding] any lease shall terminate [regarding] the debtor on the 30th day after the filing of the later case[.]" *Id.*

Or, after swapping "with respect to" for "about," the statute would read: "[T]he stay under subsection (a) [about] any action taken [about] a debt or property securing such debt or [about] any lease shall terminate [about] the debtor on the 30th day after the filing of the later case[.]" *Id.*

Alternating between different prepositions might help, at least a little. "[T]he stay under subsection (a) [covering] any action taken [regarding] a debt or property securing such debt or [about] any lease shall terminate [as to] the debtor on the 30th day after the filing of the later case[.]" *Id.*

The run-on quality of the provision doesn't make things easy. Sticking with "with respect to," but adding some brackets, might help make things more obvious. The brackets help to show that the first three "with respect to" clauses form a string, and the fourth clause is on its own.

The automatic stay "[1] with respect to any action taken [A] with respect to a debt or [B] property securing such debt or [C] with respect to any lease shall terminate [2] with respect to the debtor on the 30th day after the filing of the later case." *Id.*

Some parts of that provision are not difficult to understand. It's about the automatic stay, meaning the "stay under subsection (a)." *Id.* The provision is about action taken with respect to "a debt," or "property securing such debt," or "any lease." *Id.* The timing is straightforward, too. The stay "shall terminate" 30 days after filing the second bankruptcy petition. *Id.*

But the last phrase is shrouded in mystery. The stay ends "with respect to the debtor." *Id.*

The meaning of the phrase "with respect to the debtor" has confounded courts ever since the ink was wet on the statute. Courts have wrestled with that language, and landed in different places.

Sometimes there is a fine line between finding the best interpretation, and finding the interpretation that is the least bad. The overarching goal is to ascertain the meaning of the words enacted by Congress, without doing violence to the text or stretching language beyond recognition. But when it comes to section 362(c)(3)(A), that's easier said than done.

Courts have batted around four possible interpretations of that provision. This Court will take them up, one at a time. Each interpretation has an upside, and each interpretation has its downsides.

## I. Reading "With Respect to the Debtor" to Cover the Debtor (Only)

Under one reading, the phrase "with respect to the debtor" means exactly what it says. The automatic stay ends for any action against the *debtor* himself, not the debtor's property or the property of the estate.

That interpretation has its advantages. It's a simple, straightforward reading based on the plain language. In general, it's hard to argue with an interpretation where a statute means what it says.

But that interpretation runs into trouble when applied to the real world. It is hard to see what good could come from lifting the stay as to the debtor only, and not the debtor's property.

Maybe it would allow a creditor to harangue a debtor and obtain a judgment. But that judgment wouldn't do a creditor any good unless that judgment could lead to a recovery. And the recovery can't come from the debtor. It would come from the debtor's property.

So, reading the statute to lift the stay as to the *debtor* – and not the property of the debtor or the property of the estate – might lead to a victory for a creditor, but only on paper. A judgment against the debtor without access to any property is an empty shell. One wonders why Congress would have allowed creditors to obtain a judgment that they couldn't collect, and thus achieve the bankruptcy equivalent of a paper tiger.

What's more, interpreting "with respect to the debtor" to mean the debtor *only*, and not the debtor's property, sits uncomfortably with the beginning of the provision. The provision is about a stay "with respect to any action taken with respect to a debt *or property* securing such debt or with respect to any lease." *Id.* (emphasis added). It suggests that the creditor is going after the property, not going after the debtor personally.

"For this provision to be meaningful, termination of the stay must allow at least some collection actions to proceed against property. Reading the phrase 'with respect to the debtor' as an all-property exclusion would make § 362(c)(3)(A) oxymoronic, terminating the stay as to 'any action taken with respect to . . . property securing [a] debt,' but at the same time, as limited by the phrase, not terminating the stay as to any property." *See In re Daniel*, 404 B.R. 318, 322

(Bankr. N.D. Ill. 2009) (Wedoff, J.); *In re Jupiter*, 344 B.R. 754, 761–62 (Bankr. D.S.C. 2006) ("If § 362(c)(3)(A) merely allowed creditors to badger the Debtor with phone calls or obtain property of the debtor that is not property of the estate, then this section would be of no value."); *In re Sloniker*, 670 B.R. 349, 354 (Bankr. W.D. Wis. 2025) ("There is no legitimate way to reconcile these phrases so as to make the entire section read harmoniously with no inconsistencies, no superfluities, and no absurdities.").

That reading hasn't generated a lot of enthusiasm among the judiciary. In fact, no court has gone that route. By the look of things, no reported decision has adopted that approach. *See In re Daniel*, 404 B.R. 318, 322 (Bankr. N.D. Ill. 2009) ("No reported decision has adopted the all-property exclusion in interpreting 'with respect to the debtor' in § 362(c)(3)(A)."); *In re Reswick*, 446 B.R. 362, 367–68 (B.A.P. 9th Cir. 2011) ("The Debtor argues that section 363(c)(3)(A) terminates the stay only with respect to the debtor personally. No court decision has adopted this narrow interpretation.").

## II. Reading "With Respect to the Debtor" to Cover the Debtor and the Debtor's Property

Under a second reading, the phrase "with respect to the debtor" means the debtor *and* the debtor's property. That is, creditors could take action against the debtor and the debtor's property. But the automatic stay remains in place for the property of the estate.

That interpretation is the majority view. *See, e.g., Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226 (5th Cir. 2019); *First Fin. Bank v. Clark*, 627 B.R. 663 (N.D. Ind. 2021); *In re Williford*, 2013 WL 3772840 (Bankr. N.D. Tex. 2013); *In re Rinard*, 451 B.R. 12 (Bankr. C.D. Cal. 2011); *In re Mortimore*, 2011 WL 6717680 (D.N.J. 2011); *In re Holcomb*, 380 B.R. 813 (B.A.P. 10th Cir. 2008); *In re Jumpp*, 356 B.R. 789 (B.A.P. 1st Cir. 2006); *In re Jones*, 339 B.R. 360 (Bankr. E.D.N.C. 2006). "The majority of courts that have addressed the issue of the scope of the termination of the stay under section 362(c)(3)(A) have determined that the stay only terminates with respect to the debtor and his property, but not property of the estate." *In re Hale*, 535 B.R. 520, 523–24 (Bankr. E.D.N.Y. 2015).

A leading treatise supports that approach, too. *See* 3 Collier on Bankruptcy ¶ 362.06[3][a] (16th ed. 2026) ("[I]f there has been a stay termination based on the operation of subsection (c)(3) in a case filed within a year of a prior dismissal, the automatic stay provided under section 362(a) continues to apply in that case as to actions taken against property of the estate, but not as to actions against the debtor or property of the debtor that is not property of the estate.").

That interpretation solves the paper-tiger problem. If the automatic stay expires as to the debtor and the debtor's property, then it is conceivable that a creditor could recover *something* in a collection action.

Then again, almost all of the debtor's property becomes the property of the estate as soon as the bankruptcy petition gets filed. There isn't much left. *See* 11 U.S.C. § 541(b) (listing limited exceptions); *In re Jupiter*, 344 B.R. 754, 757 (Bankr. D.S.C. 2006) ("[P]resumably the only property that would be property of Debtor and not property of the estate is that property which has been abandoned or which is exempt or which is otherwise excluded from the definition of 'property of the estate' pursuant to § 541(b) and (c)(2)."). A creditor could go after the debtor's post-bankruptcy earnings and acquisitions in a chapter 7 case, but not much else.

So, lifting the automatic stay to allow a recovery against the debtor's property might leave a little room for a recovery by creditors. But not a lot.

It is hard to see how lifting the automatic stay would curb bankruptcy abuse if a stay remains in place for the property of the estate. After all, the property of the estate is the lion's share of the assets.

Almost all of the property is the property of the estate. So, unless the statute lifts the automatic stay for the property of the estate, the opportunity and the incentive to file a bankruptcy petition for abusive reasons would remain in place. *See In re Jupiter*, 344 B.R. at 762 ("A creditor's threat to collect would be hollow if the stay remained as to property of the estate because § 1306 broadly incorporates nearly all of a debtor's valuable pre- and post-petition property."); *see also In re Reswick*, 446 B.R. 362, 373 (B.A.P. 9th Cir. 2011) (stating that it "would leave no meaningful consequence for a debtor filing a second case within a year and would not advance the goal of deterring a debtor's second filing, because there are very few practical situations in which a creditor would take action against a debtor or non-estate property").

One wonders why Congress would enact a provision that is only an inch away from being a nothing-burger. If the provision covers the property of the debtor, but not the property of the estate, the provision would have almost no impact at all. The automatic stay would remain in place for almost everything. *See In re Reswick*, 446 B.R. 362, 368 (B.A.P. 9th Cir. 2011) ("The Debtor's interpretation, and the majority interpretation, would also render section 362(c)(3)(A) devoid of any practical effect. Very few creditors would seek to pursue only the debtor personally, or only property of the debtor. Indeed, this interpretation would provide no meaningful relief to creditors in chapter 13 cases, where repeat filings are most prevalent. Creditors in a chapter 13 case could take no action against property that the debtor owned at the time the case was commenced, because it is property of the estate under section 541(a)(1), and they could take no action against property that the debtor acquired post-petition because it would also constitute property of the estate under section 1306(a).").

A bigger problem lies in the provision lurking next door. Section 362(c)(3)(A) sits next to section 362(c)(3)(B). That provision allows a "party in interest" to file a motion to continue the automatic stay. For example, one creditor might want to put the brakes on a collection effort by another creditor.

It reads: "on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." *See* 11 U.S.C. § 362(c)(3)(B).

That provision allows the bankruptcy court to extend the automatic stay, after a motion by a "party in interest." *Id.* Again, extending the automatic stay would mean that the protection from creditors would remain in place.

It is hard to see any value in section 362(c)(3)(B) if section 362(c)(3)(A) lifts the automatic stay for the debtor and the debtor's property, but *not* the property of the estate. An interested party usually means a creditor with an interest in the property *of the estate*. *See* 11 U.S.C. § 1109(b) ("A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."). An interested party has no dog in the fight when it comes to the *debtor's* property.

A creditor as an interested party has an interest in the property of the estate. But the property of the estate doesn't include the debtor's property. So it is hard to see why a creditor would care about extending the automatic stay for the *debtor's property*. Why would an interested party give two hoots about protecting the debtor's property, when the interested party can't recover against the debtor's property anyway?

"Unless § 362(c)(3)(A) effects a termination of the automatic stay for property of the estate, there would not appear to be a need to provide parties in interest with the right to move to extend the stay or a need to extend the stay as to all creditors." *In re Jupiter*, 344 B.R. 754, 760 (Bankr. D.S.C. 2006); *see also id.* ("It seems illogical that Congress would enact a provision which both requires moving parties to meet a high burden of proof and which requires the courts to hear these matters on an expedited basis, only to have both the process and the end result meaningless and of no utility if property of the estate remains protected by the automatic stay, notwithstanding a termination of the automatic stay under § 362(c)(3)(A)."); *In re Reswick*, 446 B.R. 362, 369 (B.A.P. 9th Cir. 2011) ("Property of the estate would have to be subject to the stay termination for any party other than the debtor to have sufficient reason to file the motion.").

Then again, the debtor is an interested party, too. *See* 11 U.S.C. § 1109(b) ("A party in interest, including the debtor . . . ."). So, maybe section 362(c)(3)(B) means that the debtor can file a motion to extend the automatic stay as to the debtor's property.

It's easy to see why the debtor would want to continue the protection for the debtor and the debtor's property. But if that's what Congress intended, it's hard to see why Congress didn't use the word "debtor," and instead used the broader term "party in interest." *Id.*

A bigger issue looms large. Interpreting "the debtor" to mean "the debtor and the debtor's property" leaves a bad aftertaste for anyone drawn to textualism. The debtor and the debtor's property are two different things.

In fact, the statute itself draws that distinction. Sometimes the automatic stay provision refers to the debtor, and sometimes it refers to the property of the debtor. The automatic stay applies to lawsuits "against the debtor." *See* 11 U.S.C. § 362(a)(1). And it applies to any action involving a lien "against property of the debtor." *See* 11 U.S.C. § 362(a)(5).

If the debtor and the debtor's property aren't the same thing, then it is jarring to read "with respect to the debtor" to mean "with respect to the debtor or the property of the debtor." That's a statutory stretch. But without a little stretching, the provision would apply only to the "debtor," and the paper-tiger problem would come roaring back.

## III. Reading "With Respect to the Debtor" to Cover the Debtor, the Debtor's Property, and the Property of the Estate

Under a third reading, the phrase "with respect to the debtor" includes the debtor, the debtor's property, and the property of the estate.

That interpretation is the minority view. *See, e.g.*, *In re Smith*, 910 F.3d 576 (1st Cir. 2018); *In re Reswick*, 446 B.R. 362 (B.A.P. 9th Cir. 2011); *In re Curry*, 362 B.R. 394 (Bankr. N.D. Ill. 2007); *In re Jupiter*, 344 B.R. 754 (Bankr. D.S.C. 2006).

Courts that favor that reading often look to the underlying purpose of the statute, including its legislative history. Under that view, Congress enacted this provision to address abusive bankruptcy filings. After all, the statute was called the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

Sometimes debtors file for bankruptcy more than once simply to disrupt and delay collection efforts by creditors. So Congress took away the room for gamesmanship by limiting the automatic stay the second time around.

Some courts give a broad reading to the phrase "with respect to the debtor" to make sure that the provision achieves the statutory purpose of penalizing abusive filers. Almost all of the property goes into the estate. So, to achieve the purpose of preventing abusive filings, it is important to lift the automatic stay for everything, including the property of the estate.

At some level, that reading does have something going for it. It does promote the overarching purpose of the 2005 amendments. Congress wanted to crack down on abusive bankruptcy petitions by repeat filers. Lifting the automatic stay would take away the ability of debtors to throw a wrench in the works when creditors try to collect.

But the overarching statutory purpose needs to take a back seat to the statutory text. After all, the goal is to figure out the meaning of the words. A court is not "free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal." *See Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022). And that's where the interpretation runs into trouble.

The operative phrase is "with respect to the debtor." A reference to the estate is nowhere to be found. The omission is glaring.

It's hard to imagine that Congress got confused, and used the word "debtor" to include the estate. After all, if any distinction is fundamental to bankruptcy law, it is the distinction between the debtor and the estate.

"The plain text of § 362(c)(3)(A) is crystal clear that the automatic stay is terminated with respect to the Debtor. There is no mention of the Estate in the text. There are no fuzzy words; there are no hanging paragraphs; there are no words requiring a dictionary." *See In re Rinard*, 451 B.R. 12, 19–20 (Bankr. C.D. Cal. 2011); *see also In re Hale*, 535 B.R. 520, 523–24 (Bankr. E.D.N.Y. 2015) ("If Congress intended that the stay under section 362(c)(3)(A) terminate on the 30th day after commencement of the bankruptcy case with respect to property of the estate, it would have said so. It did not.").

It is hard to read the phrase "with respect to the debtor" to mean "with respect to the debtor, and the property of the debtor, and the property of the estate." That's the whole enchilada.

Reading the phrase "with respect to the debtor" to cover anything and everything would render that phrase meaningless. It would stand the provision on its head – a limiting principle would impose no limitation at all. The very existence of the phrase suggests that it imposes a limitation, so reading that phrase to cover everything defeats what the statute says.

In effect, that phrase would become superfluous if it covers the entire waterfront. If possible, courts give effect to each word and each phrase in a statute. *See Fischer v. United States*, 603 U.S. 480, 486 (2024).

If the phrase covers the property of the estate, one wonders why Congress went to the trouble of including any of the interior phraseology in the first place. Congress could have simply done away with all of the "with respect to" clauses, like the version discussed above (with the ellipses).

The statute could have read: "[T]he stay under subsection (a) shall terminate on the 30th day after the filing of the later case[.]" But instead, Congress strung together a bunch of limiting phrases: "[T]he stay under subsection (a) *with respect to* any action taken *with respect to* a debt or property securing such debt or *with respect to* any lease shall terminate *with respect to* the

debtor on the 30th day after the filing of the later case[.]" *See* 11 U.S.C. § 362(c)(3)(A) (emphasis added).

In effect, the minority view either expands the text to oblivion, or makes it disappear. The minority view treats the phrase "with respect to the debtor" to mean "with respect to the debtor, and the property of the debtor, and the property of the debtor." That's a rewrite. Or, from a different angle, the minority view makes the phrase "with respect to the debtor" completely disappear. The limitation doesn't exist at all.

The use of the phrase "with respect to the debtor" suggests a limitation. But under the minority view, the limitation vanishes, either through expansion or disappearance. It swallows everything, or simply goes poof.

A related textual problem jumps off the page. The minority view reads "with respect to the debtor" to include the property of the estate. In effect, that reading puts everyone in one big stewpot. But section 362(a) does the opposite. Time and again, the automatic stay provision draws distinctions between the debtor, the property of the debtor, and the property of the estate.

Specifically, section 362(a)(1) and (a)(2), (a)(6), (a)(7), and (a)(8) create an automatic stay for the "debtor." Section 362(a)(5) imposes an automatic stay for the "property of the debtor." And section 362(a)(2), (a)(3), and (a)(4) impose a stay for the "property of the estate."

Section 362(a) went to great lengths to differentiate between the debtor, the debtor's property, and the property of the estate. So it seems like a stretch to treat all of them like they fall under the umbrella of "the debtor." *See In re Holcomb*, 380 B.R. 813, 816 (B.A.P. 10th Cir. 2008) ("Nowhere in § 362 does Congress use the phrase 'with respect to the debtor' as incorporating the debtor, the debtor's separate property, and property of the estate.").

Pulling on the thread of the statutory text reveals another problem. Section 362(c)(3)(A) addresses a debtor who files for bankruptcy twice in one year. But the very next provision, section 362(c)(4), addresses a debtor who files for bankruptcy three or more times in one year.

In that situation, an automatic stay doesn't apply at all. "[I]f a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), *the stay under subsection (a) shall not go into effect* upon the filing of the later case." *See* 11 U.S.C. § 362(c)(4)(A)(i) (emphasis added).

Congress got right to the point, and laid down the law in simple, direct terms. If a debtor files for bankruptcy three or more times in a year, then the stay "shall not go into effect." *Id.* That rule applies across the board, regardless of whether the creditors want to pursue the debtor,

or the debtor's property, or the property of the estate. Congress lifted the automatic stay for three-time filers, without any caveats.

It is hard to overlook the simplicity and the directness of that neighboring language in section 362(c)(4)(A)(i), and then give the same reading to section 362(c)(3)(A). The latter provision has lots of caveats with four "with respect to" clauses. But the minority view treats those phrases like they impose no meaningful limits at all.

In other words, if section 362(c)(3)(A) covers everything – and lifts the automatic stay for the debtor, *and* the debtor's property, *and* the property of the estate – then one wonders why Congress didn't say so expressly. After all, Congress knew how to do it. That's exactly what it did in section 362(c)(4)(A)(i), the provision right next door.

"If Congress wanted to terminate the stay of all the protections of the automatic stay in § 362(c)(3)(A), it could easily have used language similar to that in § 362(c)(4)(A)(i) ('the stay under subsection (a) shall not go into effect upon the filing of the later case'). Congress instead chose to describe the termination of stay quite differently." *In re Paschal*, 337 B.R. 274, 279 (E.D.N.C. 2006); *see also In re Williford*, 2013 WL 377840, at *3 (Bankr. N.D. Tex. 2013) ("The statute's statement that the stay 'shall terminate with respect to the debtor' implies a limitation upon the scope of the termination of the automatic stay. Congress knew how to terminate the entire stay, and in fact did so in the very next section of the statute . . . . Congress did not choose to use similar language in § 362(c)(3)(A)."); 3 Collier on Bankruptcy ¶ 362.06[3][a] (16th ed. 2026) ("This intent to limit the stay termination to actions against the debtor is made abundantly clear when the language in subsection (c)(3) is compared to the much broader scope of the parallel stay termination provision in subsection (c)(4) for a debtor who has had two dismissed cases within the prior year, particularly since both provisions were enacted at the same time as part of the 2005 amendments.").

Overall, it's hard to escape a major problem with the minority view. One of the foundations of bankruptcy law is that the debtor is not the same thing as the estate. That bedrock distinction pervades the entire Bankruptcy Code. Given that reality, it is unsatisfying to read "with respect to the debtor" to cover the property of the estate.

"[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

## IV. Reading "With Respect to the Debtor" to Create a Spousal Exclusion

A vein of case law has entertained yet another possibility, which is an offshoot of the minority view. Some courts read the phrase "with respect to the debtor" to address the

possibility of a joint bankruptcy filing by two spouses. *See In re Daniel*, 404 B.R. 318 (Bankr. N.D. Ill. 2009).

Sometimes debtors file for bankruptcy on their own, and sometimes debtors file a joint petition with their spouse. The provision in question acknowledges that reality – not once, but twice.

Right off the bat, the text makes clear that it covers both a single case and a joint case. Section 362(c)(3)(A) applies "if a *single or joint* case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a *single or joint* case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)." *See* 11 U.S.C. § 362(c)(3) (emphasis added).

Spouses can file for bankruptcy together. But they don't necessarily have the same history in bankruptcy court. Maybe both spouses will have filed for bankruptcy before. Or maybe a joint filing will involve a spouse who is filing for bankruptcy for the first time, and a spouse who is filing for bankruptcy for the second time.

So a joint filing could involve spouses who are not on equal footing when it comes to an automatic stay. Section 362(c)(3)(A) would lift the automatic stay for the spouse who was filing for bankruptcy for the second time. But what about the *other* spouse? What if that spouse hadn't filed for bankruptcy before?

Some courts view the phrase "single or joint case" as the Rosetta Stone for interpreting the phrase "with respect to the debtor." Under that reading, Congress wanted to make clear that the automatic stay would get lifted "with respect to the debtor" who had filed for bankruptcy before. But the automatic stay would remain in place for the other spouse in a joint filing.

As one court put it, "[t]he most plausible and least troublesome reading of 'with respect to the debtor' places its meaning in the context of joint cases filed by a married couple. . . . '[W]ith respect to the debtor' in section 362(c)(3)(A) is best interpreted as meaning that the stay terminates as to a repeat-filing debtor, but not as to the debtor's spouse who is not a repeat filer." *See In re Reswick*, 446 B.R. 362, 369 (B.A.P. 9th Cir. 2011).

That interpretation has the advantage of giving meaning to all of the words in the statute. And it pays close attention to the statutory language, and uses the reference to a "joint case" as a clue to the broader meaning.

Still, something about that reading feels a bit forced, if not contrived. *See First Fin. Bank v. Clark*, 627 B.R. 663, 668 (N.D. Ind. 2021) ("[T]he spousal exclusion interpretation 'is out of thin air.'"); *In re Mortimore*, 2011 WL 6717680, at *5 n.3 (D.N.J. 2011) (same). Courts haven't

shown much enthusiasm for that interpretation, except bankruptcy courts in the Northern District of Illinois and a few others. The theory has a spark of creativity, but it hasn't caught fire.

For one thing, that reading seems like a stretch because of the sheer implausibility of that scenario getting any attention in the statute. One wonders how often a joint filing involves a spouse who has filed for bankruptcy before, and a spouse who has not.

Sure, it undoubtedly happens. But it seems unlikely that it happens often enough to attract the attention of Congress when drafting this provision. The spousal-exclusion theory feels like a cure to a problem that wasn't on anyone's radar screen.

The provision next door supports that intuition. Again, the statute also includes a neighboring provision about three-time filers. For them, the automatic stay doesn't apply at all.

Those debtors can file jointly, too. And once again, a three-time filer might not have the same history in bankruptcy court as his or her spouse. It is possible that one spouse could have filed for bankruptcy two other times, and another spouse could have filed for bankruptcy once before, or never.

Yet that provision doesn't use the phrase "with respect to the debtor." That conspicuous omission blows a hole in the theory that it addresses a joint filing for two-time filers in section 362(c)(3)(A).

It is hard to believe that Congress used the phrase "with respect to the debtor" to create a spousal exclusion for two-time filers in section 362(c)(3)(A), but then included no spousal exclusion for three-time filers in section 362(c)(4)(A)(i). If Congress was so concerned about protecting the spouses of two-time filers, then why didn't Congress protect the spouses of three-time filers?

It's enough to give someone the bends. Under that theory, Congress was really concerned about the spouses of second-time filers – so concerned, in fact, that Congress went to the trouble of adding text to give them special protection. But then, in the next breath, Congress didn't care about the spouses of three-time filers at all.

The spousal-exclusion theory stretches to give meaning to all of the words, but in the process, it stretches things too far. It entertains the fiction that Congress added the phrase "with respect to the debtor" to protect the spouses of two-time filers. But it doesn't explain why Congress gave no similar protection for the spouses of three-time filers.

The First Circuit takes the minority view, but rejected the "spousal exclusion" theory. In its view, the Bankruptcy Code treats debtors separately anyway, so there is no need to make that point again by adding "with respect to the debtor." *See, e.g.*, *In re Smith*, 910 F.3d 576, 584–85 (1st Cir. 2018) ("We disagree that this introductory phrase requires clarification. Joint

bankruptcy petitions are jointly administered but generally keep the rights of the two debtors separate. As a result, even without the addition of 'with respect to the debtor,' it would be clear that § 362(c)(3)(A) is inapplicable to the non-repeat-filing spouse.").

The theory has a few other problems. Only a few courts have gone that direction, and they often cite the legislative history. But when they do so, they broaden the lens and address the goals of the statute at a high level of generality. They focus on the overarching need to penalize abusive filers. They point to nothing in the legislative history that supports the spousal-exclusion theory in particular.

If Congress added "with respect to the debtor" to create a spousal exclusion, Congress did so without leaving a trace in the legislative history. The simple reality is that legislative history doesn't have much to offer when answering the question at hand.

Legislative history is on the back burner – if not off the stove altogether – when it comes to interpreting statutes. The text is front and center. *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 396 (1951) (Jackson, J., concurring) ("[I]t is only the words of the bill that have presidential approval, where that approval is given. It is not to be supposed that, in signing a bill the President endorses the whole Congressional Record. For us to undertake to reconstruct an enactment from legislative history is merely to involve the Court in political controversies which are quite proper in the enactment of a bill but should have no place in its interpretation."). But whatever limited value legislative history may have, it doesn't lend much of a hand here.

Overall, the spousal-exclusion theory gets points for creativity, but it seems too creative by half. It attempts to give meaning to all of the words in the statute, which is laudable. But in the process, it takes things too far, and adopts an implausible reading.

"[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." *Lynch v. Alworth–Stephens Co.,* 267 U.S. 364, 370 (1925) (internal quotation marks omitted).

## V. The Best of the Bad

The simple truth is that no interpretation is fully satisfying. Each interpretation has its advantages, and its drawbacks. But overall, the majority approach offers the best reading.

It is hard to get around a basic point. The difference between the debtor and the estate is one of the cornerstones of the Bankruptcy Code. It is difficult to swallow any interpretation where "the debtor" means "the debtor and the estate." That's a bridge too far.

True, the majority approach reads "with respect to the debtor" to include the debtor and the debtor's property. That reading might stretch things, but only a little. It is possible to read

the phrase "with respect to the debtor" to mean "regarding the debtor" or "concerning the debtor." And it is not outlandish to conclude that an action against the debtor's property is an action concerning the debtor.

Going from "the debtor" to "the property of the debtor" seems like a small step. Going from "the debtor" to "the property of the debtor and property of the estate" seems like a giant leap.

Reading the provision to cover the debtor's property, but not the property of the estate, may leave the automatic stay mostly in place. So, it doesn't do much to achieve the objective of curbing abusive bankruptcy filings by repeat filers.

Even so, the automatic stay is one of the fundamental parts of the Bankruptcy Code. The automatic stay serves important objectives, too. It gives a debtor breathing room, and makes sure that creditors receive equal treatment. Given the importance of the automatic stay, courts should tread lightly before concluding that the automatic stay no longer exists.

The Bankruptcy Code, "like all statutes, balances multiple, often competing interests." *See Bartenwerfer v. Buckley*, 598 U.S. 69, 81 (2023). "No statute pursues a single policy at all costs, and we are not free to rewrite this statute (or any other) as if it did." *Id.*

The ultimate goal when interpreting a statute is not to promote policy objectives or achieve a given statutory purpose. The goal is to give effect to the words actually adopted by Congress. The judicial task "is to apply the text, not to improve upon it." *See Pavelic & LeFlore v. Marvel Entertainment Group, Div. of Cadence Industries Corp.*, 493 U.S. 120, 126 (1989).

The "proper role of the judiciary" is to "apply, not amend, the work of the People's representatives." *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 90 (2017). "It is best, as usual, to apply the statute as written, and to let Congress make the needed repairs. That repairs are needed is perhaps the only thing about this wretchedly drafted statute that we can all agree upon." *United States v. Granderson*, 511 U.S. 39, 60 (1994) (Scalia, J. concurring).

Maybe Congress botched the job and enacted words that did not fully achieve what it was hoping to do. But it is not the job of courts to come to the rescue of the legislative branch. "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004) (citation omitted).

Overall, this Court concludes that the phrase "with respect to the debtor" covers the debtor and the debtor's property, but not the property of the estate.

* * *

The text has confounded the bench and the bar for two decades, and counting. A comprehensive string cite of the cases that have struggled over this issue would consume an entire ball of twine.

Courts widely disagree about the meaning of the statute. But everyone agrees on one thing. The provision is a complete mess.

Section 362(c)(3)(A) is a statutory clunker, to put it mildly. *See In re Williford*, 2013 WL 3772840, at *2 (Bankr. N.D. Tex. 2013) ("Many courts agree that § 362(c)(3) is poorly drafted. . . . Certainly, the wording of § 362(c)(3) leaves much to be desired."); *In re Curry*, 362 B.R. 394, 398 (Bankr. N.D. Ill. 2007) (acknowledging "the view of most bankruptcy judges that the statute is ambiguous and garbled"); *In re Paschal,* 337 B.R. 274, 277 (Bankr. E.D. N.C. 2006) ("The language of the statute is susceptible to conflicting interpretations, and if read literally, would apply to virtually no cases at all. In sum, it's a puzzler."); *In re Baldassaro,* 338 B.R. 178, 182 (Bankr. D.N.H. 2006) (commenting that the language of section 362(c)(3)(A) is "very poorly written"); *In re Charles*, 332 B.R. 538, 541 (Bankr. S.D. Tex. 2005) ("[T]he relevant provisions in the Act are, at best, particularly difficult to parse out and, at worst, virtually incoherent.").

To call a spade a spade, section 362(c)(3)(A) is a textual dumpster fire. At some point, Congress or the Supreme Court will need to hose it down and put it out. And until they do, bankruptcy courts will continue to address the same issue over and over again, spinning the judicial hamster wheel, and getting nowhere fast.

## Conclusion

For those reasons, the order of the bankruptcy court is respectfully reversed.[1] The case is remanded.

Date: September 11, 2026

Steven C. Seeger
United States District Judge

[1] This Court concludes that the automatic stay remained in place for the property of the debtor. Even so, that conclusion does not necessarily mean that the bankruptcy court should have granted the motion for sanctions. After all, the prevailing case law in bankruptcy courts in this district held that the automatic stay ended in its entirety. *See In re Daniel*, 404 B.R. 318 (Bankr. N.D. Ill. 2009); *In re Curry*, 362 B.R. 394 (Bankr. N.D. Ill. 2007). So Kreisler had reason to believe that it could act accordingly.